IN THE MATTER OF THE PRESENTMENTS MADE TO THE SUPERIOR COURT OF NEW JERSEY, MONMOUTH COUNTY, BY THE MONMOUTH COUNTY GRAND JURY ON OR ABOUT MAY 2, 1956.

Argued April 29, 1957—Decided May 20, 1957.

, *Mr. William Novogrod* argued the cause for appellants (*Mr. William Miller,* on the brief; *Messrs. Goldstein & Novogrod,* attorneys).

*Mr. David D. Furman,* Deputy Attorney-General, argued the cause on behalf of the Attorney-General, *Mr. Grover C. Richman, Jr.*

The opinion of the court was delivered by

WACHENFELD, J.   On May 2, 1956, the final day of its January 1956 term, the Grand Jury of Monmouth County returned two presentments which the assignment judge refused to file and subsequently ordered stricken. *R. R.* 3:3–9(*c*).

The 23 members of the grand jury appealed from this order, and the Appellate Division, on application, directed that the two presentments in issue be incorporated into the record on appeal. At the same time, it provided safeguards against unauthorized disclosure of the contents of the presentments pending final disposition of the litigation. We certified the cause on our own motion.

Although the moving parties are represented by counsel, no one appeared for the respondent and the court accordingly requested the Attorney-General to act and to file a brief.

One presentment concerned the sale and publication of obscene and indecent literature and the other suggested that municipal courts be invested by the Legislature with jurisdiction to hear and determine cases involving desertion and nonsupport.

Research, it is said, fails to disclose a single case of record in this jurisdiction or elsewhere in which the members of a grand jury have appealed from the action of a presiding judge in striking a presentment, and it is asserted that the sense of public duty which impels these movants to exercise their legal remedies parallels the significance of the im-

portant public issues presented relative to the administration of law and preservation of order.

While the appellants admit it is wise to endow the assignment judge with supervisory powers in the interests of securing orderly processes of law and for the protection of innocent persons against the circulation of charges and presentments which cannot be answered through the due process of a trial, they nevertheless insist their communities do not desire "to live a hairbreadth above the criminal level" and that the grand jury, as an organ of public protest, should be encouraged to draw presentments as one of the most effective ways to express the "conscience of the community" and to create a wholesome public reaction.

They urge that the true function of the grand jury will be best served if the courts follow a policy of receiving, filing and publicizing presentments, especially where, as here, they concern solely general conditions in the community which presumably require remedial treatment.

Although the assignment judge at the formation of the grand jury had not charged them upon the subject of salacious publications, complaints were received from a citizens' group engaged in an effort to reduce or eliminate the distribution of obscene literature. Reference was made to the widespread retailing of pornographic magazines and other such publications within Monmouth County. Magazines which had been purchased at newsstands and retail stores within the county were submitted to the grand jury by the prosecutor, and representatives of three distributing companies in Monmouth County and a number of dealers testified before the panel. Witnesses from the citizens' group, who were militant in their objections to the distribution and sale of this kind of literature, were heard. The grand jury found the publications were "questionable in nature and of a character a majority of the jury would not wish to have in their homes."

The second presentment recommended legislation to vest jurisdiction in the municipal courts over desertion and nonsupport actions. It referred to numerous cases which had

been heard. During its four-month term the grand jury had considered evidence on 31 complaints for desertion and nonsupport, or, nonsupport alone, and had voted 27 indictments for such offenses.

The two presentments were suppressed by a court order reciting "the recommended legislation would be unwise and not in the public interest" and that "no good purpose would be served" by receipt and publication.

After receiving a notice of appeal to the Appellate Division, the assignment judge, pursuant to *R. R.* 1:2–8(*h*), set forth more fully the reasons motivating the action taken. As to the presentment relating to desertion and nonsupport cases, he stated, *inter alia,* that a statute "already exists giving magistrates jurisdiction over [these matters]"; "the presentment * * * does not disclose whether the grand jury was cognizant of the jurisdiction already possessed by magistrates in such cases, nor does it disclose whether the grand jury had in mind to deprive the Chancery Division of the Superior Court and the Juvenile and Domestic Relations Courts of their present jurisdiction * * *"; and the presentment does not "display sufficient knowledge of the subject, nor of existing laws dealing with the problem, to give value to the recommendations." He also noted that the general subject of domestic relations had recently been given extensive study by committees of the Supreme Court and of the State Bar whose efforts would undoubtedly, at least in part, form the basis of future legislation.

The assignment judge objected to the presentment relating to obscene literature on the grounds that the court itself had prepared "a charge to the new incoming grand jury * * *" which included "a special paragraph dealing with that very subject and recommending indictments and prosecutions of those believed guilty of uttering, exhibiting, possessing or selling any obscene or indecent book, pamphlet, picture or other representation" and that the discussion therein was "rather vague; failed to emphasize the responsibility of distributors and dealers in such objectionable literature, and the responsibility of law enforcement officers;

and failed to include any direct and pointed recommendation for the course of action to be taken in dealing with the evil."

The lower court objected particularly to the last paragraph of this presentment which "left it up to each municipality to enact ordinances aimed at the evil to be suppressed."

It also commented that the state statute "would appear to be entirely adequate to handle the evil at which it is aimed" (the grand jury reached the same conclusion); that the reference to municipal enactments would result in various municipalities having different enforcement provisions and thereby produce conflicting decisions in local courts; and that the grand jury apparently did not realize the implications of the "constitutional provisions that must be considered in the drafting of any local ordinance" dealing with the subject matter.

Grand jury presentments, sometimes described as "reports," have been the subject of much comment. *E. g., Kuh, "The Grand Jury Presentment: Foul Blow or Fair Play?,"* 55 *Col. L. R.* 1103 (1955); *Dession and Cohen, "The Inquisitorial Functions of Grand Juries,"* 41 *Yale L. J.* 687 (1932); *Comment,* 52 *Mich. L. R.* 711 (1954); *Note,* 37 *Minn. L. R.* 586 (1953). They generally fall into two separate categories: *"first,* those addressing themselves to a general condition; and *second,* those censuring particular persons." *Dession and Cohen, supra,* at 706.

While in jurisdictions where presentments are permitted, there exists a substantial division of authority among the cases as to the acceptability of those in the second category, there is practical unanimity as to the first. They are usually looked upon as a constructive service to the community. *Dession and Cohen, supra.*

█ In our jurisdiction, when a presentment sets forth facts from which it appears that a crime has been committed for which an indictment can be had, the grand jury may not elect to file a presentment rather than to return an indictment, and such portions of the presentment as specifically relate to the alleged indictable offense will be stricken. *In re Messano,* 16 *N. J.* 142 (1954).

Our guide on the origin, privileges and responsibilities of a grand jury and its broad right to return presentments is found in *In re Camden County Grand Jury,* 10 *N. J.* 23 (1952), where the Chief Justice said:

"A practice imported here from England three centuries ago as part of the common law and steadily exercised ever since under three successive State Constitutions is too firmly entrenched in our jurisprudence to yield to fancied evils. * * * The maintenance of popular confidence in government requires that there be some body of laymen which may investigate any instances of public wrongdoing." (10 *N. J.*, at *page* 65) .

"Thus grand jury presentments of public affairs serve a need that is not met by any other procedure. The grand jury provides a readily available group of representative citizens of the county empowered, as occasion may demand, to voice the conscience of the community. * * *" (10 *N. J.*, at *page* 66)

Again:

"* *· * the sound administration of government at every level depends in large measure on enlightened and informed public opinion and * * * in this field the grand jury not only has rights but grave responsibilities. * * *" (10 *N. J.*, at *page* 34)

"* * * they have been a great force in bringing about many substantial improvements · in public affairs which otherwise would have not come to pass or at least would have been long delayed." (10 *N. J.*, at *page* 59)

█ Since that decision *R. R.* 3:3–9(c) has been enacted to further clarify the procedure but not to limit the broad scope of the "Camden" pronouncement.

█ Even without the abundant authority which supports the action of the grand jury in the case *sub judice,* the practice of grand juries in this jurisdiction to investigate, make inquiry, take testimony and to render "reports" springs from the common-law right when it relates to matters affecting the public interest and general welfare.

█ A grand jury, of course, cannot forage at will upon any whim it may entertain. Its expression must be limited to matters imminent and pertinent, relating to the public welfare and of ultimate benefit to the community served by

the grand jury. The presentments in question, however, spoke of common problems prevailing to an extent demanding added official attention, and the grand jury undoubtedly hoped further study and consideration of them would redound to the public good.

The prominence of these vexatious matters was reflected in the appointment of committees by this court and the State Bar to study the field of domestic relations and to recommend improvements, and in the intention of the assignment judge to specifically charge the new grand jury as to violations of the laws banning obscene publications. Surely these developments, however, did not preempt the field and disqualify the instant grand jury which, in point of time, arrived first on the scene with its thoughts and suggestions as to what should be done.

To impugn such laudatory efforts by a conscientious and constructive grand jury and to destroy by suppression the value of its labors is not only unfair but would have a tendency to deter subsequent panels from similar endeavors, although there might be great need for the moral stimulant of a grand jury directive.

Even if the presentments had the faults described, their publication with proper commentaries by the court below would have given the public the full advantage of the grand jury's views and the court's criticism. The alerting of the public to all of the facts generally proves beneficial and this is the procedure which should have been adopted.

The discretionary judicial right of suppression should be sparingly exercised and exerted only where the matters returned are clearly and unquestionably contrary to the public good. The presentments *sub judice* do not come within this classification and the court's ruling runs counter to the rationale and philosophy agreed upon and endorsed in *In re Camden County Grand Jury, supra.*

The order below is reversed and the cause remanded for the filing and publication of the presentments, to be proceeded with in accordance with this opinion. No costs.

*For reversal and remandment*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and WEINTRAUB—7.

*For affirmance*—None.